This is Tripathy v. McCoy. All right, Ms. Sternly, you have reserved three minutes for rebuttal, so that gives you seven minutes out of the gate. You may proceed. Am I saying the name right, Tripathy? Tripathy. Tripathy. Your Honor. Not even close. Thank you. May it please the Court, Sarah Sternly on behalf of Plaintiff Appellant Sondra Tripathy. The key issue in this case is about RLUIPA, and in particular, whether the Supreme Court's decision in Tansin abrogates Gagnea to permit individual capacity monetary damages that Congress always intended to provide with RLUIPA. Tansin cleanly and clearly answers the two most important questions here, which are clear notice and constitutional avoidance. So I'd like to walk through the dispositive language. But, I mean, the Supreme Court affirmed the Second Circuit's ruling in the same case, with the names inverted, in which the Second Circuit said RLUIPA and RFRA are different. So, I mean, what is the basis for saying that the Supreme Court sub silencio reversed or disagreed with that portion of the Second Circuit's ruling? Well, we'll call this Tansin 1 and Tansin 2. We could do Tanbeer or Tansin, whatever you think. 1 and 2 is good. In Tansin 1, what Tansin 2 provides is a clear answer to the antecedent legal question that the Court never analyzed in Tansin 1, and it never analyzed in Gagnea, which is what Tansin 1 relied on. The Court assumed the outcome of the analysis, but you have to do that statutory interpretation. And when you do the statutory interpretation, as Tansin tells us, the answer is clear. Well, several other circuits since have not found it so clear, I guess, right? So there's only one other circuit that since Tansin has found that RLUIPA does not permit individual capacity monetary damages. In Walker and the Seventh Circuit, there was waiver. The Court didn't decide the issue. And in the Fifth Circuit, they did follow their prior precedent there. However, the Fifth Circuit has a different standard for overruling prior precedent, and it's a much stricter standard than what the Second Circuit permits. There's a well-established exception to the prior panel rule in the Second Circuit that permits a court to reconsider a prior panel's holding when an intervening Supreme Court decision casts doubt that undermines the rationale or assumption. And that's exactly what Tansin did here. Tansin did the statutory interpretation that this Court never did in Tansin 1 and never did in Gagnea. I'll point you to a decision from this circuit from last year, JS v. New York State Department of Corrections, 76F432. And the Court very clearly applied the proper test for spending clause legislation. And it said that what you do is you have to do the statutory interpretation. You look at the plain meaning, you look at the context, and you look at the legislative history. There they found that the text provided clear notice, and thus they rejected any spending clause challenge. What Tansin 1 and Gagnea never did was that statutory interpretation, and that's what Tansin 1 applies, that antecedent legal question that has to be done. And when you do that, you realize that there is a clear answer, and that means that constitutional avoidance has no place. Constitutional avoidance cannot be used to beget ambiguity or to come up with an issue. It can only be used if there is ambiguity. And as Tansin tells us, there's a clear answer. There is no ambiguity here. But, again, it seems to me that the Second Circuit articulated a distinction between the two cases. And so until the Supreme Court says that that's a flawed distinction, why would we be ignoring our own precedent that expressly addressed the very issue on this appeal? Because what Gagnea held and what Tansin 1 held as well was a holding of constitutional avoidance. It said that the spending clause prohibited this, but it never did that statutory analysis. And if you don't do the statutory analysis, you can't get to those other questions. And that's why this court allows overruling prior precedent where a case casts doubt on controlling precedent, where it breaks the link that the court premised its earlier decision. And that's exactly what Tansin 2 did here. It broke the link because it did the statutory interpretation that never happened here. It did the statutory interpretation of RFRA, right? It did the statutory interpretation of RFRA. But what's very important is that RFRA and RLUPA are identical. These statutes were not. Well, they're not identical. I mean, they derive from different parts of the Constitution, right? They derive from different parts of the Constitution. So wouldn't that make them non-identical? The Supreme Court in this court has always referred to RFRA and RLUPA as twins, as sister statutes. Well, they were passed together. And so I don't know that that matters so much as how they're characterized colloquially. But they are derived from different constitutional powers. Do you agree with that? I would agree with that. But I wouldn't say that that's just what they're described as colloquially. Courts repeatedly use RFRA cases to interpret RLUPA cases and vice versa. Well, for certain provisions that might be true. But the issue is whether or not it extends to individuals who haven't signed on to the contract, so to speak, of a spending clause statute. Again, if you look at Tansen, it tells us why the Congress expressly allowed a private right of action. The text of Tansen is very clear. And the text that it was interpreting in Tansen is identical to the text that we have here. The context was also the same, to provide individuals with greater religious protections after Smith. I'll point you to what the Supreme Court said, which was that RFRA's text provides a clear answer for whether a person may sue and obtain relief against a government, which is defined to include an official or other person acting under color of law. That text is exactly what is in RLUPA. There is no difference there. Well, the difference is that one applies to state actors. And those state actors are only going to be liable by virtue of the spending clause, right? Well, I would argue that it's actually clearer here because what the Supreme Court said was that persons acting under color of law draws on one of the most well-known civil rights statutes in 1983, which has long been interpreted to permit suits against officials in individual capacities. But that's because it's based on the 14th Amendment and that you're allowed – I mean, that's what it does. Here – the trick would be if we only had Gagné, I think you would have a stronger argument to say, look, Gagné is out there. And then the Supreme Court came out with this other decision. But the problem is our intervening decision, Tansen 1, said that its completely different conclusion, which is what the Supreme Court adopted, is perfectly consistent with Gagné. So we as a panel are bound not just by Gagné but also by Tansen 1, which said, oh, and by the way, these two very different conclusions under two different statutes are not inconsistent. So that's the thing is I'm not sure I agree with you that we have such a loose approach to whether one panel can revisit – well, two panels in this case, two panels' conclusions. Well, I'll point you to two things here. One is that, again, the court never did that statutory interpretation. Had it done the statutory interpretation – Maybe you're just saying we got it wrong. But you know what? We may think – maybe all three of us think, gosh, that was pretty stupid what they did. But we don't get to second guess what earlier panels did unless the Supreme Court has really undermined it. And the thing is they didn't say anything that undermined Tansen 2 where we said we reaffirmed Gagné. So I guess that's the thing. I just don't see how we can now revisit two precedents of our own as a single panel. Maybe you can ask us to unbonk it. Well, we believe that the answer can be clearly here. We would welcome a chance to go unbonk if you believe that's required. But I'll note that in Tansen 1 there was never a state officer in front of the court. In Tansen 1, the panel was just examining – was just contrasting it with Gagné. But the reasoning there, again, is – cannot stand after Tansen 1. And the spending clause issue is just – cannot – is not a problem once you do the statutory interpretation. And the spending clause – what Gagné and what Tansen 1 didn't have in front of it was arguments about SABRI and the necessary and proper clause. And those there clearly demonstrate why it doesn't – why there is no special spending clause rule that says that the entity liable under the spending clause statute has to be the funding recipient. There's no rule about that. The spending clause legislation is considered under the dole factors. And if you look under SABRI – and also – I would also point you to this court's decision in U.S. v. Dawkins, 999. What you're saying is Gagné got it wrong under pre-existing – right? I mean, South Dakota came – South Dakota v. Dole came before Gagné, right? Correct. So you're saying our panel got it wrong? Correct. Under case law that was already existing and Gagné could have looked at and didn't. But we don't get to revisit old panel precedents saying, you know what? If you go back 10 or 15 years before, there was case law that you didn't look at and you got it wrong. We're stuck, right? You're stuck, but the Second Circuit permits the court to overrule their prior precedent when they have a case that casts out. That's including when it's another statute that has compelling reasons to interpret the two together. That's exactly what we have here. Riffra and Ralupe have always been interpreted in lockstep. This court has multiple times – Not always. Not by the Second Circuit. We've done them differently. But anyway, we're over and I'm really concerned about time. So I know you have three minutes for rebuttal, so we'll come back to you after we've heard from Ms. Rosenbluth. Thank you. All right, thank you. Good morning, Your Honors, and may it please the court, Sarah Rosenbluth for appellees. The court should affirm the district court's dismissal of the complaint in its entirety. The district court correctly dismissed plaintiff's claim under Ralupe because this court held in Washington v. Gagné that Ralupe does not permit individual capacity suits against state officers and Gagné remains good law today. Not having been expressly overruled, Gagné remains good law so long as there is no conflict, incompatibility, or inconsistency between it and an intervening Supreme Court decision. And there is none, as the panel has already been commenting on. The Supreme Court's decision in Tanzan affirmed a decision of this court and did not create any such inconsistency. So I said there were other courts that had reached their conclusion post-Tanzan, the Supreme Court version, that it doesn't extend to Ralupe. And I was, I think, corrected. So I'm curious if you have a view as to whether or not the other circuit cases are relevant or not. Yes, six circuits have reaffirmed their prior holdings under Ralupe post-Tanzan. Now, admittedly- In agreement with us. The sixth circuit came out the same way that we did in Gagné. Correct, yes. Admittedly, only one of those circuits, the fifth circuit, has directly addressed the import of Tanzan on its earlier decisions. But that case held that it did not abrogate the Sassamon, which was the earlier fifth circuit decision. And I think that the analysis, my friend on the other side has suggested that the fifth circuit standard is much higher than this circuit. But I think if you read that decision, you'll see that they're fundamentally analyzing whether there's any logical inconsistency between Tanzan and Sassamon. And this court preemptively held that there was no such inconsistency, which I think makes this a rather unusual case because this court has literally already addressed the effect of Tanzan on its prior case law. And then that opinion was affirmed on different, I mean, it focused on a different thing, but certainly the Supreme Court didn't say anything critical of that portion of the second circuit holding. That's right. I think the Supreme Court decision rested on almost the same reasoning that the second circuits did. The second circuits, this court's employed a few other sort of prongs of analysis, but the Supreme Court ultimately affirmed all the reasoning. And also, there's been a repeated invocation that RFRA and RLUPA are twin statutes and they're interpreted identically. But even in Tanzan, the Supreme Court said that the term appropriate relief, which is the relevant statutory term here, is inherently context dependent, something that the court also said in Sassamon. And that there's very relevant context here, which, of course, this court already recognized in Tanzan I, which is the fact that they were enacted pursuant to different sources of constitutional authority that implicate different constitutional concerns. It hasn't been addressed yet, but I just wanted to briefly note that I don't believe that this case presents an opportunity for the court to consider whether the Commerce Clause basis for RLUPA requires a different conclusion. Plaintiff did invoke the Commerce Clause in his complaint, but he has not pleaded any facts showing that the alleged substantial burden on religion, as opposed to the fact of incarceration itself, that the substantial burden on commerce. No, the alleged substantial burden on religion is what is required to affect foreign or interstate commerce. That's under 42 U.S.C. 2000 CC 1B. And so his only factual allegation is that by virtue of being incarcerated, his family in North Carolina and India were required to travel across state lines to visit him. But that result is owing to the fact of incarceration, not to the alleged burden on his religion. I wanted to just briefly touch on the free exercise claim as well, if I may. The district court also correctly held that that claim is barred by qualified immunity under established precedent. A prison regulation that burdens the constitutional rights of an incarcerated individual is nonetheless valid if it is reasonably related to a legitimate penological interest. And it was not clearly established here that that penological interest was missing. To the contrary, the Supreme Court held in McCune in 2002 that a similar admission of guilt requirement in a similar prison sex offender counseling program serves the, quote, vital penological purpose of rehabilitation. And that the program requirement here serves that same vital interest, appears on the face of the program guidelines that were attached to the complaint. Those guidelines explain that acceptance of responsibility for past offending behavior is a key component of treatment because it is through acceptance of responsibility that an individual can learn to internalize and control the thoughts and behaviors that led to the sexual misconduct and can thereby avoid similar offending conduct in the future. It seems to suggest that he was not even asked or required to do that. He was simply required to admit to openly and honestly discuss the behavior that led to the incarceration, which doesn't seem to require that he confess that he committed the particular sexual misconduct. He was not required to confess to specific penal law offenses. Now, I do think it's fair that the fact that he did insist on his innocence of the sex crimes did result in some, you know, he was issued the behavioral contract as a result. So, you know, I think, and he was released from incarceration before this really ever became a problem. But I think probably that would have been enforced ultimately, although the record is not developed entirely on that point. It wasn't completely clear to me. Is this a voluntary program? This is a mandatory program for sex offenders? And again, this is at a motion to dismiss stage, so the record is not very well developed on this. My understanding is that this was his required programming and, you know, something that, and successful completion of your programming is a factor that can affect your eligibility for your conditional release date, which here was one year earlier prior to his maximum sentence expiration date. But in any event, this is not a case like Severe where this court recently cautioned against invoking QI at the motion to dismiss stage because here the justification is plain from the documents attached to the complaint. And it is a justification that itself has been upheld by the Supreme Court in McCune. Unless the court has any further questions? No. All right. Thank you very much. We ask the court to affirm. Thank you. All right. Thank you very much, Ms. Rosenbluth. We'll now hear from Ms. Sternlieb for three minutes of rebuttal. Your Honors, my friend mentioned the context of RFRA and RLUFA, but I want to point you to Tanzan II's language that states that in the context of suits against government officials, damages have long been awarded as appropriate relief. And it found that because they are long awarded, including under 1983, which was why RLUFA was enacted to provide those actions that you could have gotten pre-Smith under 1983. It's the exact same context here. There's no question that that is what RLUFA was intended to do and that that is what the court should have found when it looked at the statutory interpretation. When you say when it looked at the statutory interpretation, that's a phrase you've used repeatedly. I'm not sure I fully understand what you're saying. What I'm saying is that there's a clear route for what the court has to do when you have spending clause legislation, and there's a clear test for the kind of statutory interpretation you do. Again, you look at the plain meaning, you look at the context, and you look at the legislative history. The plain language has been informed by Tanzan II of exactly what it means. The context was the same. And the legislative history is actually even clearer in RLUFA than it is in RFRA. So your view is then all that means, whether it's a spending clause or some other clause, is irrelevant. We only look at the language of the statute. That's your view. I wouldn't say it's irrelevant. If you look at the language of the statute and if you find that it's clear, then yes, the rest of it is irrelevant. This is basically the Oldham dissent is what you're tracking, right? After Tanzan, the language of the statute is unambiguous. We don't get into canons of construction like constitutional avoidance because they're only employed when you have statutory ambiguity. And now you've got to – the only way to get out from under this plain language reading is to find that literally that would be unconstitutional under the spending clause, and that's when you get into South Dakota v. Dole, right? That's exactly right, but I think South Dakota v. Dole is the first test. But I just want to note that at the end of the day, the Supreme Court's decision in Tleilsky last year rejects this kind of spending clause exceptionalism that defendants posit. In Gagnea, the court noted that the spending power allows the imposition of liability only on parties actually receiving the state funds. But the court in Gagnea didn't do the statutory interpretation, and it didn't have Sabri in front of it, and it didn't have a host of other spending clause statutes that permit liability to run against someone who is not the funding recipient. I'll point you to MTALA, where it provides civil fines on federally funded hospital physicians that negligently violate provisions relating to patient treatment. There's also Title X, which provides criminal fines on the employees of the entity administering a program receiving Title X funds who coerces someone to undergo an abortion. There's the Hatch Act, which removes state and local government employees that receive federal funds from their position if that employee violates electioneering prohibitions. Now, your honors- Well, what do you mean when you say it didn't have Sabri in front of it? The court in Gagnea- Because it didn't consider it. It did not consider it, and the briefing did not consider it, and didn't bring it to the court's attention. Well, we don't throw out old panel decisions because we think there were other Supreme Court cases they just didn't think about adequately. I mean, we don't say, well, your reasoning was flawed, right? That's basically like saying we can ignore prior panel decisions because we think their reasoning was flawed, but we can't do that. You're right that you don't throw them out, but when you do- Or reconsider them, or you didn't think about throwing them out. Well, you can reconsider them when there's an intervening Supreme Court decision, and that's what we have here in Tansen. But Sabri is not that. Sabri is not that, no, but Tansen is. Judge Jacobs, I'd just like to note your dissent from the denial of Ann Bonk in Tansen, which recognized that given that RFRA and LUPA attacked the same wrong in the same way, in the same words, it is implausible that appropriate relief against a government means something different in RFRA. We now know that appropriate- How'd that go, Jacobs? But your sense there was correct. It may have- That may not have been how the Supreme Court ended up, but your sense that the two statutes have to be interpreted together was exactly right, and that's why Tansen 2 permits you to reverse here. Unfortunately, the Supreme Court does not invariably agree with me. But the Supreme Court's reasoning would agree with you. All right. Well, thank you both. Very well argued. Very interesting case. We were going to reserve the decision, but I'm grateful to both of you for following the argument. Thank you, Your Honors. Thank you.